**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MCLEAN GORDON,

                    *Plaintiff,*

          v.

EQUITAS CAPITAL GROUP, LLC and ALEX
LEYKIND,

                    *Gordons.*

---

Case No. 1:24-cv-6789-ALC-VF

<br>

## MEMORANDUM OF LAW IN OPPOSITION TO
## <u>DEFENDANTS' MOTION TO DISMISS</u>

<br>

**THOMPSON & SKRABANEK, PLLC**
515 Madison Avenue, 31st Floor
New York, New York 10022
(646) 568-4280
*Attorneys for Plaintiff McLean Gordon*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL OBJECTION .................................................................................................... 2

MOTION TO DISMISS STANDARD ........................................................................................ 2

ARGUMENT ............................................................................................................................... 3

    I. THE STATUTE OF FRAUDS DOES NOT APPLY. ................................................................. 3

    A. THE SEPARATE ADDITIONAL WRITINGS SIGNED BY LEYKIND CREATE AN ENFORCEABLE
    AGREEMENT. ..................................................................................................................... 4

    B. EVEN ASSUMING THE ADDITIONAL SIGNED WRITINGS DO NOT SATISFY THE STATUTE OF FRAUDS,
    THIS IS NOT AN AGREEMENT "NOT TO BE PERFORMED WITHIN ONE YEAR." .......................... 5

    C. THE BROKER EXCEPTION TO N.Y. GEN. OBLIG. LAW § 5-701(A)(10) DOES APPLY ............... 7

    II. PLAINTIFF'S BREACH OF GOOD FAITH AND FAIR DEALING CLAIM SURVIVES EVEN IF HIS BREACH
    OF CONTRACT CLAIM FAILS. ............................................................................................... 8

    III. ALL OF PLAINTIFF'S REMAINING NON-LABOR LAW CLAIMS STATE VIABLE CAUSES OF ACTION. 9

    A. THE CLAIMS ARE NOT PREMATURE. .................................................................................. 9

    1. DEFENDANTS MISCONSTRUE PLAINTIFF'S COMPLAINT. THERE ARE PIPELINE DEALS THAT HAVE
    CLOSED AND FOR WHICH DEFENDANTS ARE IN BREACH. ......................................................... 9

    2. EVEN IF THERE *WERE* NO CLOSED PIPELINE DEALS, DEFENDANTS FURTHER MISCONSTRUE THE FACTS
    IN THE FAC CONCERNING THEIR REPUDIATION. ..................................................................... 9

    B. PLAINTIFFS' OFFER WAS OBVIOUSLY ACCEPTED. ............................................................. 11

    C. PLAINTIFF DID NOT AGREE TO A 5% COMMISSION. ........................................................... 11

    D. THE DECLARATORY JUDGMENT CLAIM IS PROPERLY PLEADED. ......................................... 12

    E. THE FIFA CLAIMS SHOULD SURVIVE. .............................................................................. 13

    IV. PLAINTIFF'S LABOR LAW CLAIMS ARE WELL-PLEADED, OR ANY MINOR DEFICIENCIES CAN BE
    CURED BY AMENDMENT. .................................................................................................. 14

    V. IN THE ALTERNATIVE TO DISMISSAL, THE COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND.
    17

    CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

<u>C<small>ASES</small></u>

*159 MP Corp. v. Redbridge Bedford, LLC,*
   160 A.D.3d 176 (2d Dept. 2018)----------------------------------------------------------------13

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.,*
   98 N.Y.2d 144, 746 N.Y.S.2d 131 (2002) --------------------------------------------------- 9

*ACR Sys. v. Woori Bank,*
   232 F. Supp. 3d 471 (S.D.N.Y. 2017)------------------------------------------------------ 3

*AEA Middle Mkt. Debt Funding LLC v. Marblegate Asset Mgt., LLC,*
   214 A.D.3d 111 (2d Dept. 2023)------------------------------------------------------------ 8

*Anderson News, L.L.C. v. Am. Media, Inc.,*
   680 F.3d 162 (2d Cir. 2012) --------------------------------------------------------------- 3

*Bonsey v. Kates,*
   2013 WL 4494678 (S.D.N.Y. August 21, 2013) -------------------------------------------- 7

*Bynog v. Cipriani Group, Inc.,*
   1 N.Y.3d 193 (2003) ---------------------------------------------------------------------15

*Carlson v. American Intl. Group, Inc.,*
   30 N.Y.3d 288 (2017) -------------------------------------------------------------------14

*Crabtree v. Elizabeth Arden Sales Corp.,*
   305 N.Y. 48 (1953)---------------------------------------------------------------------- 4

*D & N Boening, Inc. v. Kirsch Beverages, Inc.,*
   63 N.Y.2d 449 (1984) ------------------------------------------------------------------- 5

*D'Amato v. Five Star Reporting, Inc.,*
   80 F. Supp. 3d 395 (E.D.N.Y. 2015) ----------------------------------------------------16

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,*
   411 F.3d 384 (2d Cir. 2005) ------------------------------------------------------------12

*Foster v. Kovner,*
   840 N.Y.S.2d 328 (1st Dept. 2007)------------------------------------------------------ 5

*Giugliano v. FS2 Capital Partners, LLC,*
   2015 WL 5124796 (E.D.N.Y. September 1, 2015)------------------------------------------16

*Hallmark Aviation Ltd. v. AWAS Aviation Servs.,*

2013 U.S. Dist. LEXIS 61705 (S.D.N.Y. 2013) ------------------------------------------------------- 2

*Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV,*
754 F. Supp. 2d 610 (S.D.N.Y. 2010) ---------------------------------------------------------- 6

*Jim-Mar Corp. v. Aquatic Constr.,*
195 A.D.2d 868 (3d Dept. 1993) ------------------------------------------------------------------11

*Kelly v. P & G Ventures 1, LLC,*
148 A.D.3d 1002 (2d Dept. 2017). ----------------------------------------------------------- 4

*Kobre v. Instrument Sys. Corp.,*
54 A.D.2d 625 (1st Dept. 1976) ------------------------------------------------------------- 4

*Komlossy v. Faruqi & Faruqi, LLP,*
2017 WL 722033 (S.D.N.Y. 2017), *aff'd*, 714 F. App'x 11 (2d Cir. 2017) ---------------------- 7

*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC,*
2015 U.S. Dist. LEXIS 22345 (S.D.N.Y. 2015) ------------------------------------------- 3

*Lehman v. Dow Jones & Co.,*
783 F.2d 285 (2nd Cir. 1986) --------------------------------------------------------------- 7

*Marks v. Cowdin,*
226 N.Y. 138 (1919) -------------------------------------------------------------------------- 4

*McCollester v. Chisholm,*
104 A.D.2d 361 (2d Dept. 1984), *aff'd*, 65 N.Y.2d 891 (1985) ----------------------------------- 7

*Mentz v. Newwitter,*
122 N.Y. 491 (1890) ------------------------------------------------------------------------- 4

*Pace v. Perk,*
440 N.Y.S.2d 710 (2d Dept. 1981) --------------------------------------------------------- 6

*Pachter v. Bernard Hodes Group, Inc.,*
10 N.Y.3d 609 (2008) ------------------------------------------------------------------------16

*Padilla v. Yeshiva Univ.,*
691 Fed. Appx. 53 (2d Cir. 2017)------------------------------------------------------------ 3

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC,*
921 N.Y.S.2d 260 (2d Dept. 2011) ----------------------------------------------------- 10, 13

*Phelps v. Kapnolas,*

iv

308 F.3d 180 (2d Cir. 2002) ------------------------------------------------------------------------- 2

*South Cherry St., LLC v. Hennessee Group LLC*,
573 F.3d 98 (2d Cir. 2009) ------------------------------------------------------------------------ 5

*Sutter v. Lane*,
61 A.D.3d 1310 (3d Dept. 2009) ----------------------------------------------------------------- 7

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) -------------------------------------------------------------------------------- 3

*Tietjen v. Hamilton-Beach/Proctor-Silex, Inc.*,
1998 U.S. Dist. LEXIS 19404 (S.D.N.Y. 1998) ------------------------------------------------ 3

*Trustees of First Baptist Church v. Brooklyn Fire Ins. Co.*,
19 N.Y. 305 (1859) --------------------------------------------------------------------------------- 5

*Wahad v. FBI*,
994 F. Supp. 237 (S.D.N.Y. 1998) ------------------------------------------------------------- 17

*Wakefield v. Northern Telecom, Inc.*,
769 F.2d 109 (2d Cir. 1985) --------------------------------------------------------------------- 16

*Williams v. Preeminent Protective Services, Inc.*,
2017 WL 1592556 (S.D.N.Y. 2017) ------------------------------------------------------------- 6

*Zupan v. Blumberg*,
2 N.Y.2d 547 (1957) -------------------------------------------------------------------------------- 7

STATUTES

Fed. R. Civ. P. 8(a)(3) ----------------------------------------------------------------------------- 8
N.Y. Gen. Oblig. L. § 5-701(a)(10)------------------------------------------------------------- 7
N.Y. Lab. Law § 190(2) --------------------------------------------------------------------------- 15
NY General Business Law Chapter 44-A------------------------------------------------------- 14

Plaintiff McLean Gordon ("Plaintiff" or "Gordon") by and through his attorneys, Thompson & Skrabanek, PLLC, submits the following Memorandum of Law in opposition to Defendants Equitas Capital Group, LLC ("Equitas") and Alex Leykind ("Leykind")'s Motion to Dismiss (the "*Mot.*"):

## **PRELIMINARY STATEMENT**

Defendants' motion is a basket of contradictions. For example, at times, Defendants declare there was a contract between the parties, while at others, they declare there was no such enforceable contract.

Second, Defendants cannot answer core questions, because to do so would harm their positions: Was Gordon Defendants' independent contractor or employee? Have the deals in the pipeline closed or not? Defendants purposefully fail to take positions on these topics and instead attempt to distract from Plaintiff's clear right to plead various theories of liability and damages in the alternative. They do this to try and confuse the Court by cherry-picking cases from different contexts (i.e., employment vs. non-employment; admitted breach vs. repudiation) that do not fit the facts of this case. The Court must not let them have it both ways.

Third, Defendants' motion attempts to ignore and paint over the clear, repeated course of dealing between the parties over nearly a full year. This is an attempt to turn a pre-discovery motion into a motion for summary judgment without allowing Plaintiff the opportunity to exhibit the hundreds of emails, deliverables, invoices, and payments exchanged between the parties.

Lastly, the motion repeatedly and blatantly misstates well-pleaded facts from the First Amended Complaint ("FAC") to fit a certain inaccurate narrative.

For all of these reasons, the motion should be denied.

1

## PROCEDURAL OBJECTION

Preliminarily, Plaintiff objects to all portions of the motion not previously raised at the pre-motion level. These include:

- Point II(4), that there was no clear acceptance of an offer.

- Point II(5), that Plaintiff allegedly agreed to a 5% commission.[1]

- Point III(5), that the NYS FIFA has been repealed.

- Point III(6), that Plaintiff's NYLL claims fail for Plaintiff's alleged failure to plausibly plead facts that he was an employee.

At the very least, because Plaintiff has not had an opportunity to address these purported pleading deficiencies before this moment, the Court should provide Plaintiff an additional opportunity to amend his Complaint. *See* Fed. R. Civ. P 15(a) (leave to amend "shall be freely given when justice so requires").

## MOTION TO DISMISS STANDARD

"The issue on a 12(b)(6) motion to dismiss is not whether the plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support her claim." *Hallmark Aviation Ltd. v. AWAS Aviation Servs.*, 2013 U.S. Dist. LEXIS 61705, \*6 (S.D.N.Y. 2013) (court determines "legal feasibility of the complaint" and does not "assay the weight of the evidence which might be offered in support thereof"); *see also Phelps v. Kapnolas*, 308 F.3d 180, 184-85 (2d Cir. 2002) ("Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.").

A complaint "does not need detailed factual allegations," only "enough facts 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'"

---

[1] This position is not true, but even if it were, it directly contradicts and undermines Point II(4).

*Padilla v. Yeshiva Univ.*, 691 Fed. Appx. 53, 55 (2nd Cir. 2017), citing *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2nd Cir. 2010); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 189-90 (2nd Cir. 2012) ("plausibility standard is lower than a probability standard, and there may therefore be more than one plausible interpretation").

The complaint is to be read "as a whole," so even where a defendant may argue that an individual "allegation is conclusory, the rest of the complaint [may supply] sufficient context to satisfy [a plaintiff's] pleading burden." *ACR Sys. v. Woori Bank*, 232 F. Supp. 3d 471, 478 (S.D.N.Y. 2017). "[I]n addressing a 12(b)(6) motion, a court must accept the plaintiff's allegations of fact as true and draw all reasonable inferences in the plaintiff's favor." *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, 2015 U.S. Dist. LEXIS 22345, *6 (S.D.N.Y. 2015); *Anderson*, 680 F.3d at 189 ("failure to assume the truth of reasonable inferences" is clear error).

Further, the Court should deny a motion to dismiss where the facts pleaded state any cognizable cause of action at all. *See, e.g., Tietjen v. Hamilton-Beach/Proctor-Silex, Inc.*, 1998 U.S. Dist. LEXIS 19404, *4-6 (S.D.N.Y. 1998) (denying motion to dismiss as facts alleged stated tort claims even though they had not expressly been asserted); *cf., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'").

## ARGUMENT

### I.    The statute of frauds does not apply.

As a preliminary matter, unlike many statute of frauds cases where there is no signed writing, it is undisputed here that there *is* a writing between the parties. Defendants merely argue that—on a cute little technicality—the writing is *unsigned* by Leykind. Standing alone, this fact

might make this dispute fall within the purview of the statute of frauds. In the greater context of the overall dispute, however, the argument fails.

### A.    The separate additional writings signed by Leykind create an enforceable agreement.

The Statute of Frauds may be satisfied by a writing or writings that contain "'substantially the whole agreement, and all its material terms and conditions, so that one reading it can understand from it what the agreement is'" *Kobre v. Instrument Sys. Corp.*, 54 A.D.2d 625, 626 (1st Dept. 1976), aff'd 43 N.Y.2d 862, quoting *Mentz v. Newwitter*, 122 N.Y. 491, 497 (1890)). The statute does <u>not</u> require the writing "to be in one document. It may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject matter and occasion." *Marks v. Cowdin*, 226 N.Y. 138, 145 (1919). "It is not even necessary that they be writings from the promisor to the promisee. They may be from the promisor to his own agent." *Id.*[2]

That the separate writings "were not prepared or signed with the intention of evidencing the contract, or that they came into existence subsequent to its execution, is of no consequence…it is enough, to meet the statute's demands, that they were signed with intent to authenticate the information contained therein and that such information does evidence the terms of the contract." *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 54 (1953). "In the event that one of the writings is unsigned, it may be read together with the signed writings, provided that they clearly refer to the same subject matter or transaction." *Kelly v. P & G Ventures 1, LLC*, 148 A.D.3d 1002, 1003 (2d Dept. 2017).

---

[2] Defendants' statute of frauds defense is particularly premature at the pre-discovery pleadings stage when the only available evidence is Defendant Leykind's emails directly with Gordon. Plaintiff has had no opportunity to consider Leykind's writings to others, *e.g.*, Leykind's correspondence with Equitas's accounts payable department, regarding the nature of the agreement with Gordon.

Here, Gordon's claims do initially arise from the email attached as <u>Exhibit A</u> to the FAC. However, they *also* arise from the many dozens of *other* emails exchanged between Gordon and Leykind that relate back by context and circumstance to the initial email. Many of those emails were "signed" by Leykind within the statute of frauds because they include not only his pre-populated signature block but also his additional typed signature, "A-." *See* Declaration of McLean Gordon (*Gordon Decl.*) ¶¶ 4-20; <u>Exhibits 1-2</u> to *Gordon Decl*.

Defendants concede that a typed signature meets the statute of frauds. *See Mot.* at 4 and cases cited therein. It is respectfully submitted that the multiple additional emails signed by Leykind easily satisfies the applicable standard of a signed writing in that they contain "substantially the whole agreement" with "all its material terms and conditions."

**B.    Even assuming the additional signed writings do not satisfy the statute of frauds, this is <u>not</u> an agreement "not to be performed within one year."**

The statute of frauds does not apply to an agreement that *could have* but also *could not have* been performed within one year. *See, e.g., Trustees of First Baptist Church v. Brooklyn Fire Ins. Co.*, 19 N.Y. 305, 307 (1859) ("It is not the meaning of the statute that the contract <u>must</u> be performed within a year") (emphasis added); *D & N Boening, Inc. v. Kirsch Beverages, Inc*., 63 N.Y.2d 449, 455 (1984) ("Wherever an agreement has been found to be susceptible of fulfillment within that time, <u>in whatever manner and however impractical,</u> this court has held the one-year provision of the Statute to be inapplicable, a writing unnecessary, and the agreement not barred.") (emphasis added); *Foster v. Kovner*, 840 N.Y.S.2d 328, 331 (1st Dept. 2007) ("[t]he question is not what the probable, or <u>expected</u>, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, <u>required</u> that it should not be performed within the year.") (emphasis added); *South Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 104-105 (2d Cir. 2009) (statute of frauds' one-year language interpreted narrowly to

apply to only those contracts that by their very terms, or necessary construction, <u>must</u> endure for a period longer than one year).

Therefore, notwithstanding the cases cited by Defendants in their motion, if the <u>facts</u> support that the agreement <u>was</u> actually performed within one year, the statute of frauds should not apply. Here, numerous deals in the pipeline closed within one year. *Gordon Decl.* ¶¶ 21-22; *see also, e.g., Pace v. Perk,* 440 N.Y.S.2d 710 (2d Dept. 1981) (denying movant's motion for summary judgment on statute of frauds and holding the issue was better determined at trial because the real estate dealings between the parties were capable of being performed within one year); *see also* FAC ¶ 25 ("Between September 2023 and June 2024,[3] Gordon worked on no less than twenty deals for Defendants, every single one of which resolved on terms consistent with the parties' agreement.").

Additionally, the cases cited by Defendants asserting that, as a matter of law, this was an agreement not to be performed within one year (*Mot.* at Point I(2)), are distinguishable on the facts. With the exception of *Komlossy*, each and every single one of them concerns a single deal instead of a series of multiple deals and an elongated, well-papered course of dealing between the parties, as here. Additionally, each and every single one of Defendants' cases concerns a *true* oral agreement instead of an agreement that has actually been reduced to writing, as here.

The chart below further exhibits this point:

| **Case** | **Oral Agreement Only?** | **Single Deal?** |
|---|---|---|
| *Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV*, 754 F. Supp. 2d 610, 613 (S.D.N.Y. 2010) | Yes | Yes |
| *Williams v. Preeminent Protective Services, Inc.*, 2017 | Yes | Yes |

---

[3] Or approximately nine months.

| | | |
|---|---|---|
| WL 1592556 at *5 (S.D.N.Y. April 28, 2017) | | |
| *Komlossy v. Faruqi & Faruqi, LLP*, 2017 WL 722033 at *6 (S.D.N.Y. February 23, 2017), aff'd, 714 F. App'x 11 (2d Cir. 2017) | Yes | Arguably no. |
| *Bonsey v. Kates*, 2013 WL 4494678 at *7 (S.D.N.Y. August 21, 2013) | Yes | Yes |
| *Zupan v. Blumberg*, 2 N.Y.2d 547 (1957) | Yes | Yes |
| *McCollester v. Chisholm*, 104 A.D.2d 361, 361-62 (2d Dept. 1984), aff'd, 65 N.Y.2d 891 (1985) | Yes | Appears Yes |

For these reasons, the Court should find that the statute of frauds does not apply because this was not an agreement that was incapable of being performed within one year.

**C.    The broker exception to N.Y. Gen. Oblig. Law § 5-701(a)(10) <u>does</u> apply.**

N.Y. Gen. Oblig. L. § 5-701(a)(10) discusses contracts that "pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting, or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein." The law further enumerates that the statute of frauds "shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman." *Id.*

In *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 293 (2nd Cir. 1986), the court determined that N.Y. Gen. Oblig. L. §5-701(a)(10) did not require an auctioneer, attorney, or any other excepted profession to be licensed in New York in order to be afforded the statute of frauds exception. The court further found that the statute of frauds exception was not grounded in the state's ability to discipline the excepted professions. *Id.*

Also, as held in *Sutter v. Lane*, 61 A.D.3d 1310, 1311 (3d Dept. 2009), a licensed real estate

salesperson's oral contract for commissions was determined not to fall within the statute of frauds as it fell under the N.Y. Gen. Oblig. L. § 5-701(a)(10) exceptions. The court did not even bother to address whether the real estate salesperson was working with a real estate broker.

Here, Gordon "worked on dozens of deals for Equitas for the refinancing and closing of commercial loans on various properties in and around New York City." FAC ¶ 15. Defendants do not dispute that Gordon is a licensed real estate salesperson in the State of Virginia. Per the Second Circuit's decision in *Lehman*, it is irrelevant that Gordon is not licensed in New York in order for him to be afforded the statute of frauds exceptions.

## II.   Plaintiff's breach of good faith and fair dealing claim survives even if his breach of contract claim fails.

Defendants first argue, "Because there is no enforceable contract, plaintiff's implied covenant claim also fails and is barred by the statute of frauds." Defendants cite no authority for this proposition, which is inaccurate. There unequivocally *is* a contract between the parties; there is an offer, acceptance, performance, and payment without objection. All of this cannot be reasonably disputed. However, if the Court accepts Defendants' arguments, that contract is unenforceable under the statute of frauds. This outcome does not mean no contract exists.

Second, Defendants overlook Gordon's clear right to plead claims for liability in the alternative. Fed. R. Civ. P. 8(a)(3).

Third, a claim for breach of the implied covenant of good faith and fair dealing *can* proceed independent of a breach of contract, so long as the conduct alleged is distinct from the conduct constituting a breach of contract. *See AEA Middle Mkt. Debt Funding LLC v. Marblegate Asset Mgt., LLC*, 214 A.D.3d 111 (2d Dept. 2023). In this case, that conduct is Defendants' purposeful failure and refusal to identify which of the pipeline deals have closed and which have not. The implied covenant of good faith and fair dealing provides—in the broadest terms—that a party to a

contract may not act to destroy the value of the contract to the other party. *See 511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131 (2002) ("[N]either party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."). Defendants are guilty of these bad acts herein by preventing Gordon from even knowing when to submit an invoice on the pipeline deals that have, in fact, closed.

To the extent the Court finds this was insufficiently pleaded in the FAC, it can easily be rectified in a Second Amended Complaint, and Gordon requests leave to so amend.

**III.    All of Plaintiff's remaining non-labor law claims state viable causes of action.**

    **A.    The claims are not premature.**

        **1.    Defendants misconstrue Plaintiff's complaint. There <u>are</u> pipeline deals that have closed and for which Defendants are in breach.**

Defendants assert that "plaintiff has not alleged a deal that closed for which he was not paid a commission to which he was entitled." *Mot.* at 21; *see also Mot.* at 23 ("plaintiff has failed to allege that Equitas received its fee for any deal for which plaintiff claims entitlement to a commission that has not been paid"). This repeated assertion is simply false, as paragraph 40 of the FAC expressly states that Gordon has not been properly paid the <u>10%</u> he "expressly invoiced" on two specific deals. *See also Gordon Decl.* ¶ 29; <u>Exhibits 3-4</u> to *Gordon Decl.* (rescission of 5% offer before acceptance and unpaid 10% invoice). This argument must be discarded.

        **2.    Even if there *were* no closed pipeline deals, Defendants further misconstrue the facts in the FAC concerning their repudiation.**

First, Defendants claim "The FAC does not plausibly plead factual content of any such definite repudiation." *Mot.* at 11. Yet Paragraph 31 of the FAC asserts: "Unfortunately, in or around late June 2024, <u>Equitas breached and repudiated the agreement **by informing** Gordon that

Equitas would only pay him 5% on a number of deals for which Gordon had already provided the requisite assistance to entitle him to his full 10% or 17.5% commission." (emphasis added). Plaintiff's well-pleaded complaint must be accepted as true despite Defendants' wishes for the opposite.

Defendants then argue, "…plaintiff cannot be heard to declare Equitas in default now, **when no funds have been received** by Equitas from a closed transaction." *Mot.* at 11 (emphasis added). But this puts the cart before the horse and is another example of Defendants seeking to have it both ways before discovery has even started. The Court is reminded that Defendants bring their motion at the pre-discovery phase, and there is not one shred of evidence that the remaining deals in question have *not* closed. This Court may not assume as much. Either (a) These deals have closed, and Defendants are actively in breach for failing to pay, or (b) The deals have not yet closed, but the doctrine of repudiation / anticipatory breach still applies.

"[U]nder the doctrine of anticipatory repudiation, where one party repudiates its contractual obligations 'prior to the time designated for performance,' the nonrepudiating party may immediately claim damages for total breach and be absolved from its obligations of future performance…" *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 921 N.Y.S.2d 260, 264 (2d Dept. 2011).

Defendants creatively argue that repudiation is premature here because Gordon pleads he is already entitled to the commissions. *Mot.* at 10-11. But this is not entirely accurate and could again be clarified in a Second Amended Complaint. To wit, while Gordon has performed all the *work* that would entitle him to the commissions he seeks (*see* FAC ¶ 29), Gordon has not yet sent invoices on many of the pipeline deals. This is only because Defendants have breached their duty of good faith and fair dealing by failing to disclose whether the deals have or have not, in fact,

closed (*see supra*).

But, to the extent the Court accepts Defendants' cases arguing that a plaintiff's continued performance is a necessary element of pursuing a repudiation theory (*Mot.* at 10-11), this requirement is easily overcome by Plaintiff's need to still submit invoices on the pipeline deals that have closed but about which he has not yet been informed. This, again, can be rectified in a Second Amended Complaint, and leave to file same is respectfully requested.

### B.    Plaintiffs' offer was obviously accepted.

Yet again, Defendants misconstrue the well-pleaded facts from the Complaint. They boldly state that they never accepted Plaintiff's offer. *Mot* at Point II(4). This ignores the well-pleaded facts about the elongated course of dealing between the parties. For example, the FAC ¶¶ 15, 23-24 identify that dozens of deals were worked on; dozens of past invoices were submitted; and dozens of past invoices were paid.

Additionally, silence, without objection to an invoice, coupled with payment of same constitutes acceptance as a matter of law in New York. *See, e.g., Jim-Mar Corp. v. Aquatic Constr.*, 195 A.D.2d 868, 870 (3d Dept. 1993) ("Here, defendant impliedly agreed to pay the amount due as reflected in plaintiff's invoice when defendant received and retained it without rejecting it or objecting to it within a reasonable period of … Under these circumstances, defendant was bound to examine the invoice and raise any objections, and its silence is deemed acquiescence and warrants enforcement of the implied agreement to pay.") (internal citations omitted). It strains credibility to assert that Leykind never accepted Gordon's initial offer when Defendants paid commission after commission without objection.

### C.    Plaintiff did <u>not</u> agree to a 5% commission.

First, the Court should not even consider Defendants' argument that Gordon agreed to a

5% commission post-termination at the pre-discovery phase. To do so would obviously be prejudicial to Gordon and against the clear guidelines of Fed. R. Civ. P. 12(b).

Second, however, to the extent the Court wishes to convert Defendants' motion into a motion for summary judgment, that motion fails. There are a litany of facts discussed in the *Gordon Decl.* directly rebutting Defendants' assertions on this point. *See Gordon Decl.* ¶¶ 23-29; Exhibits 3-4 to *Gordon Decl.* Additionally, the purported 5% commission agreement would be a novation, but it fails for lack of consideration. Gordon was already legally entitled to at least a 10% commission, but he would be receiving nothing in return for a reduction down to 5%. *Wasserstrom v. Interstate Litho Corp.*, 114 A.D.2d 952, 955 (2d Dept. 1985) ("a novation requires that valuable consideration be given for the new contract").

### D.    The declaratory judgment claim is properly pleaded.

Devoting minimal analysis, Defendants assert that Gordon's breach of contract claim "settles [the] issue" of the need for a declaratory judgment. Far from it. First, recall that Defendants simultaneously staked all of the following contradictory positions within their motion: there is no contract; there is a contract but it is unenforceable; and there is a contract but it has not yet been breached. Applying Defendants' own cited cases, a declaratory judgment will serve a useful purpose in clarifying or settling the legal issues involved, and it will offer relief from uncertainty. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,* 411 F.3d 384, 389 (2d Cir. 2005) (cited in *Mot.* at 19).

If, for example, *arguendo*, the Court finds that Defendants have not *yet* breached the parties' contract but Gordon will be entitled to his commission when certain pipeline deals do close, a declaratory judgment to that effect would be far more efficient than requiring Gordon to sue separately for each particular deal. Or the Court could require Defendants to disclose whenever

a deal closes. A declaratory judgment action is appropriate if it aims to declare the rights and legal relations of the parties to stabilize an otherwise uncertain relationship, which exists here. *159 MP Corp. v. Redbridge Bedford, LLC*, 160 A.D.3d 176 (2d Dept. 2018). Further, "If the plaintiff in a declaratory judgment action is not entitled to the declaration sought, the remedy is not a dismissal of the complaint, but a declaration of the rights of the parties, whatever those rights  may be." *Id*. at 193.

### E.    The FIFA claims should survive.

#### 1.    City FIFA—failure to timely pay.

Similarly to Defendants' failed analysis regarding breach of fair dealing, Defendants misstate Gordon's burden at the pleading stage. Gordon does not need to have an "enforceable agreement" in order to prevail under FIFA (*see Mot.* at 19); the analysis between FIFA and statute of frauds is distinct. Plaintiff plausibly pleads that he was hired by Defendants to provide services. That this occurred is not in dispute. This is all that is required under the NYC Admin. Code in order to state a claim.

Second, Defendants mistakenly overlook that FIFA *requires* Equitas as the "hiring party" to provide Gordon with a written contract. Their failure to do so is an independent violation of FIFA. *See* NYC Admin. Code § 20-928. To the extent Defendants assert there is no signed writing between the parties, they admit to their liability under FIFA.

Third, with regard to the timeliness of payment under NYC Admin. Code § 20-929, Defendants again misstate the well-pleaded anticipatory breach and repudiation allegations within the FAC to suit their false narrative. Alex Leykind, on behalf of Equitas, has **already informed** Gordon that he **will not be** paying Gordon his 10%-17.5% commissions whenever pipeline deals close. FAC ¶ 31. Gordon's FIFA claims are ripe **now**. *See Palmetto Partners*, 921 N.Y.S.2d at

264.

### 2.    City FIFA—retaliation.

Yet again, Defendants misstate the well-pleaded facts in the FAC. Paragraph 77 states: "Specifically, when Gordon protested against Equitas's illegal underpayment of him pursuant to the parties' agreement, Equitas immediately terminated him." The "exercise[e] or attempt[] to exercise any right"[4] by Gordon under this statute was Gordon's protesting of Leykind's unilateral repudiation of the contract and payment to Gordon of less than to which he was entitled under the parties' contract. For that protest, he was fired. By its plain language, NYC Admin Code § 20-930 is an extremely broad statute. Defendants' willful ignorance of the words actually used in the FAC does not mean this claim is not well-pleaded.

### 3.    State FIFA.

To the extent that NYLL § 191-d was repealed, it was simply recodified at NY General Business Law Chapter 44-A. Gordon's New York State FIFA claims are identical to his New York City claims. This, again, can be clarified in a Second Amended Complaint.

## IV.    Plaintiff's labor law claims are well-pleaded, or any minor deficiencies can be cured by amendment.

### A.    Whether Plaintiff was a misclassified employee cannot fairly be determined at this stage.

First, Gordon concedes that the FAC inadvertently fails to plead specific facts to suggest that he was a misclassified employee. The issue of Defendants' control or lack thereof over Gordon is addressed in the *Gordon Decl.* ¶¶ 30-32, and these facts can be incorporated into a Second Amended Complaint with relative ease, so leave to amend is therefore requested.

Second, whether an individual is an employee or independent contractor is a detailed, fact-

---

[4] NYC Admin. Code § 20-930. To the extent that the FAC inadvertently references the wrong code section, the Court should take judicial notice or allow Plaintiff to amend.

intensive analysis that is best determined at trial, not in a motion on the pleadings. *Carlson v. American Intl. Group, Inc.*, 30 N.Y.3d 288, 301 (2017) ("the determination of whether someone is an independent contractor is a fact-specific question").

The NYLL broadly defines an "employee" as "any person employed for hire by an employer in any employment," N.Y. Lab. Law § 190(2), and an "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service," *id.* § 190(3). In determining whether a worker is an employee or independent contractor under the NYLL, courts consider the factors outlined in *Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 198 (2003): "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." Still, "the critical inquiry in determining whether an employment relationship exists [under the New York Labor Law] pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Id.*

Here, there are numerous indicia of direct control over Gordon such that he could be determined to be an employee. *Gordon Decl.* ¶¶ 31-32. In the same vein, Defendants cite no evidence that Gordon was *not* an employee. As such, because the inquiry is so fact-intensive, it is simply premature for the Court to dispose of all of Gordon's employment-based claims before discovery even commences.

**B.    Defendants' defenses to Plaintiff's NYLL claims fail.**

Regarding Gordon's NYLL claims,[5] Defendants fixate on the fact that Gordon's commissions are not yet "earned," but this is inaccurate in many ways. First, Defendants cite no

---

[5] Gordon concedes that the NYLL § 191(1)(c) statutory vehicle for recovery of unpaid wages can be dismissed.

authority that obviates the doctrine of repudiation in the labor law context. If Leykind has already unequivocally informed Gordon that he will not pay commissions on the pipeline deals, as alleged (FAC ¶ 31), it is unnecessary for Gordon to wait to sue. Purely as a matter of judicial efficiency, whether or not Gordon is entitled to commissions is ripe for determination now.

Additionally, Gordon pleads that his wages <u>have</u> been earned. *See, e.g.,* FAC ¶¶ 26-29. Defendants' citation to *Giugliano v. FS2 Capital Partners, LLC*, 2015 WL 5124796 (E.D.N.Y. September 1, 2015) is misplaced. *Giugliano* merely stands for the proposition that parties *can* agree in writing when wages are "earned." In *Giugliano*, the parties did. Here, they did not. This failure to agree in advance does not render the well-pleaded allegations in the FAC any less credible.

Lastly, regarding Gordon's statutory vehicle for recovery of unpaid wages pursuant to NYLL § 193, Defendants misconstrue the law cited in the FAC that, "[i]n determining whether an employee's commission is 'earned' and thus subject to NYLL § 193, courts will apply the common law rule: a 'broker who produces a person ready and willing to enter into a contract upon his employer's terms ... has earned his commissions.'" *D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 414 (E.D.N.Y. 2015). This, coupled with the allegation that the parties involved in the pipeline deals are "ready, willing, and able to close" (FAC ¶ 60) satisfies the low burden of Plaintiff's pleading requirement at present.

In short, Defendants unilaterally assert that Gordon's wages were not "earned" until the commission is received. This goes against the holdings of *Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609, 618 (2008) and *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109 (2d Cir. 1985). In *Wakefield*, the Second Circuit held:

> [W]e believe [the contract] cannot be read to enable the defendant to terminate an
> employee for the purpose of avoiding the payment of commissions which are

otherwise owed. Such an interpretation would make the performance by one party the cause of the other party's non-performance. Commission agreements are customarily used in circumstances in which agents or employees cannot be directly supervised and their performance cannot be effectively monitored or measured apart from concrete results. In such circumstances, an unfettered right to avoid payment of earned commissions in the principal or employer creates incentives counterproductive to the purpose of the contract itself in that the better the performance by the employee, the greater the temptation to terminate.

*Id*. at 112-113.

And, this failure to pay wages is not merely hypothetical, as Gordon's wages have been reduced on past closed deals and not just future pipeline deals. FAC ¶ 40.

Lastly, Defendants devote a single sentence within their motion to attempting to dismiss Gordon's NYLL retaliation claim. *See* FAC ¶¶ 107-111; *see specifically* ¶ 109 ("the immediate termination of Plaintiff upon his complaint to Defendants that it was improper and illegal for them to reduce his commissions, violates NYLL § 215"). It is respectfully submitted that this claim cannot be dismissed without Defendants first providing any analysis for *why* it should be dismissed.

**V.    In the alternative to dismissal, the Court should grant Plaintiff leave to amend.**

Gordon obviously disputes that the FAC fails to raise a right to relief above the speculative level. To the extent the Court disagrees, however, Gordon should be granted leave to amend to include the additional facts shared by Gordon in his Declaration, annexed hereto. As just one example, Gordon should be permitted to plead that Defendants' failure to share which pipeline deals have closed constitutes a breach of the covenant of good faith and fair dealing (independent of Defendants' breach of contract for failing to pay Gordon's commission).[6]

This is *not* a case wherein Plaintiff can prove "no set of facts" in support of any of his

---

[6] This is because, as identified above, Defendants' inequitable acts have placed Gordon in a Catch-22 where he cannot submit an invoice when Defendants are in sole possession of the information that would permit Gordon to know when to submit the invoice and how much to invoice.

thirteen causes of action. *See, e.g., Wahad v. FBI*, 994 F. Supp. 237 (S.D.N.Y. 1998) (leave to amend should be freely granted unless no set of facts could entitle claimant to relief and amending would be futile).

## CONCLUSION

Based on the foregoing, it is downright fanciful for Defendants to request wholesale dismissal of Plaintiff's entire complaint, yet they boldly do. The Court should reject the attempt and allow this matter to proceed to discovery. Disclosure of which pipeline deals have closed would force Defendants to take actual positions instead of transacting only in hypotheticals and blatantly misconstruing the facts pleaded in the FAC.

Alternatively, the Court should grant Plaintiff leave to amend his Complaint further to address any minor and inadvertent pleading deficiencies. Gordon respectfully requests such other relief to which the Court deems him justly entitled.

THOMPSON & SKRABANEK, PLLC

By: _____

J.R. Skrabanek
42 W. 38th Street, Suite 1002
New York, NY 10018
Tel: (646) 568-4280
jrs@ts-firm.com

ATTORNEYS FOR PLAINTIFF MCLEAN GORDON