**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **MCLEAN GORDON,**<br>                              **Plaintiff,**<br><br>                    **-against-**<br><br>**EQUITAS CAPITAL GROUP, LLC and**<br>**ALEX LEYKIND,**<br>                              **Defendants.** | **1:24-cv-06789 (ALC) (VF)**<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff McLean Gordon ("Plaintiff" or "Gordon") brings this action against Equitas Capital Group, LLC ("Equitas") and Alex Leykind ("Leykind," with Equitas "Defendants") for (1) violations of the New York City and New York State Freelance Isn't Free Acts ("FIFA"), (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) unjust enrichment, (5) account stated, and (6) a declaratory judgment. In the alternative to his FIFA claims, he pleads violations of the New York Labor Law ("NYLL").

Defendants move to dismiss Plaintiff's First Amended Complaint ("FAC") under Federal Rules of Civil Procedure 12(b)(1) and (6). For the reasons that follow, the motion is granted.

## BACKGROUND

### I.      Factual History[1]

Plaintiff alleges that beginning in July 2023 he provided real estate services to Equitas, under the supervision of its principal, Alex Leykind. ECF No. 15 ¶¶ 10, 14, 19 ("FAC"). His work

---

[1] The following facts are taken from Plaintiff's First Amended Complaint ("FAC") docketed at ECF No. 15 and accepted as true for the purposes of this motion.

included underwriting loan scenarios, preparing lender materials, analyzing lender terms, supporting loan officers, and advising on loan placement. *Id.* ¶ 14.

According to the FAC, on July 17, 2023, the parties agreed by email that Gordon would receive a 10 percent commission on Equitas's fees for loans on which he assisted. *Id.* ¶ 17; ECF No. 15-1 ("Ex. A"). Gordon wrote: "My understanding is that you're offering me 10% of what fees Equitas gets [on the specified loans], after paying referral fees. I think that's very fair." Ex. A. Leykind replied: "Correct, Over ride from the guys on their loans[]. [T]his will be of net after referral fee is paid out." *Id.* Gordon responded: "Thank you, that's generous. Let's grow this company." *Id.* The emails do not include typed-name signatures; Leykind's reply shows only an automatically generated signature block. *Id.*

In March of 2024, Leykind allegedly increased Gordon's rate to 17.5 percent on certain deals, which Gordon accepted. FAC ¶¶ 19–20. Plaintiff pleads a course of dealing in which he sent periodic "pipeline" emails that referenced the 17.5 percent rate, to which Leykind did not object. *Id.* ¶ 21; ECF No. 15-2 ("Ex. B"). Exhibit B to the FAC is a June 19, 2024 email from Gordon to Leykind that attaches a pipeline chart. Ex. B. The chart lists several deals and includes "17.50%" for some entries and "10.00%" for others. *Id.* at 3–4. One minute after Gordon's email, Leykind replied "Thanks" and "Thank you," signed off "A-," and included his Equitas signature block, without objecting to the 17.5% entries. *Id.* at 2.

The FAC also refers to a July 13, 2023 "Acknowledgement of Meeting Minutes," which described Gordon's role and directed that he be copied on all construction, agency, and commercial mortgage-backed securities loans. FAC ¶ 27. Gordon and Leykind allegedly both signed this. *Id.*

Plaintiff alleges that in late June of 2024 Equitas told him it would pay only five percent on several deals for which he had already provided the requisite work. *Id.* ¶ 31. When he protested, Leykind terminated his services. *Id.* ¶ 36. On July 2, 2024, Gordon sent Equitas a pipeline chart summarizing deals and unpaid obligations. *Id.* ¶¶ 37–39. In July and August of 2024, Equitas allegedly paid commissions of five percent on two closed deals, despite Gordon's invoices for ten percent. *Id.* ¶ 40. Plaintiff alleges that his unpaid commissions amount to $328,375, only $10,500 of which Equitas has paid. *Id.* ¶ 61.

For his statutory claims, Plaintiff pleads that he was a "freelance worker" and Equitas a "hiring party" under FIFA, that Equitas failed to make timely and full payment, and that he is entitled to double damages. *Id.* ¶¶ 67–68. Plaintiff alternatively pleads he was "misclassified" as a freelancer and Defendants should have treated him as an employee, for the purposes of his NYLL claims. *Id.* ¶ 43. In his prayer for relief, Plaintiff seeks compensatory and statutory damages of at least $1,313,500, plus fees and costs. *Id.* at 19.

## II.     Procedural History

On September 6, 2024, Plaintiff filed the complaint initiating this action. ECF No. 1. On December 17, 2024, Plaintiff filed the First Amended Complaint. ECF No. 15. The FAC pleads claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, account stated, declaratory judgment, and FIFA violations, or in the alternative, NYLL violations. *Id.* ¶¶ 1–2.

On January 16, 2025, Defendants filed their motion to dismiss. ECF No. 18. On January 30, 2025, Plaintiff filed his opposition along with supporting exhibits. ECF Nos. 19–20. On February 6, 2025, Defendants filed their reply. ECF No. 21.

**STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, courts accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation omitted).

**DISCUSSION**

Defendants move to dismiss the FAC on several independent grounds. They first argue that the alleged commission agreement is unenforceable under the Statute of Frauds because it is not memorialized in a signed writing, cannot be performed within one year, and concerns compensation for negotiating loans. ECF No. 18-1 at 2–7. Apart from the Statute of Frauds, Defendants contend that the breach of contract claim fails to state a cause of action because no commission was earned until the deals closed, no anticipatory breach occurred, and no clear acceptance of an offer was shown. *Id.* at 9–13.

Defendants further assert that Plaintiff's remaining non-labor claims—including breach of the implied covenant, unjust enrichment, accounts stated, and declaratory judgment—are derivative of the failed contract claim and must likewise be dismissed. *Id.* at 16–19. Finally, Defendants argue that Plaintiff lacks standing under FIFA and fails to plausibly allege the employer–employee relationship necessary to sustain his NYLL claims. *Id.* at 19–21. The Court first addresses the Statute of Frauds.

I.      **Breach of Contract and Statute of Frauds**

New York General Obligations Law ("GOL") Section 5-701(a)(1) states that agreements to be performed within more than one year must be in writing. Section 5-701(a)(10) imposes the same requirement on agreements "to pay compensation for services rendered in negotiating a loan." These provisions partially form the New York Statute of Frauds. *See Hanson v. Hanson*, No. 18 civ. 695, 2019 WL 935127, at *3 (S.D.N.Y. Feb. 26, 2019). For writings that fall within the Statute, courts will not enforce an agreement absent a signed writing subscribed by the party

to be charged. *See Truman v. Brown*, 434 F. Supp. 3d 100, 112 (S.D.N.Y. 2020); *see also Parma Tile Mosaic & Marble Co. v. Estate of Short*, 87 N.Y.2d 524, 527 (N.Y. 1996).

"While a series of writings 'may be read together to satisfy the Statute of Frauds provided that they clearly refer to the same subject matter or transaction,' the combination of writings still must 'contain substantially the whole agreement and all its material terms and conditions.'" *KJ Roberts & Co. Inc. v. MDC Partners Inc.*, No. 12 Civ. 5779, 2014 WL 1013828, at *7 (S.D.N.Y. Mar. 14, 2014) (quoting *Kobre v. Instrument Sys. Corp.*, 387 N.Y.S.2d 617, 618–19 (1st Dep't 1976)); *see also Alkholi v. Macklowe*, 17 Civ. 16, 2017 WL 6804076, (S.D.N.Y. Dec. 22, 2017) (citing *Morris Cohon & Co. v. Russell*, 23 N.Y.2d 569, 575–76 (N.Y. 1969) ("It is a well-established rule that in a contract action a memorandum sufficient to meet the requirements of the Statute of Frauds must contain expressly or by reasonable implication all the material terms of the agreement, including the rate of compensation if there has been agreement on that matter.")).

Defendants move to dismiss the contract claim as barred by the Statute of Frauds under GOL Sections 5-701(a)(1) and 5-701(a)(10). Defendants contend that the Statute applies because the alleged commission agreement both concerns compensation for negotiating loans and, by its terms, could not be performed within one year. ECF No. 18-1 at 5–7; ECF No. 21 at 1–4. The Court finds the commission agreement falls squarely within the Statute of Frauds and is therefore unenforceable unless evidenced by a writing subscribed by Defendants. *See Zeising v. Kelly*, 152 F. Supp. 2d 335, 343–44 (S.D.N.Y. 2001) (holding that an agreement to pay compensation for negotiating financing fell within Section 5-701(a)(10) and was unenforceable without a subscribed writing); *Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV*, 754 F. Supp. 2d 610, 613 (S.D.N.Y.

2010). Because the FAC does not bear sufficient writings to satisfy the Statute of Frauds, Defendants' motion to dismiss the breach of contract claim is granted.

### a. One-Year Provision (Section 5-701(a)(1))

Defendants argue that the alleged commission agreement could not be performed within one year and is therefore void absent a writing. ECF No. 18 at 5. Plaintiff counters that the arrangement was terminable at will and thus performable within a year, relying on New York's narrow construction of the one-year provision. ECF No. 19 at 5; *see also D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 455 (1984) (stating that if performance is possible within one year, "however impractical," the statute does not apply).

While an at-will agreement may, in some cases, escape the one-year rule, the difficulty here is that Plaintiff's entitlement to commissions depended on closing loans, which in turn relied on third parties. Agreements conditioned on the actions of third parties are incapable of performance within a year and thus fall within the Statute of Frauds. *See Intertex*, 754 F. Supp. 2d at 613 ("[I]f the accrual of commission is dependent upon the will of a third party and not upon the parties to the contract, the oral commission agreement is, by its terms, incapable of completion within one year."). Plaintiff attempts to distinguish *Intertex* based on the oral agreement in that case but fails to offer any support for why the Court should treat an unsigned agreement reduced to writing differently. *See* ECF No. 19 at 6–7. Accordingly, Plaintiff's breach of contract claim falls under the one-year provision.

### b. Loan Negotiation Provision (Section 5-701(a)(10))

Defendants argue that the agreement is unenforceable because it falls squarely under Section 5-701(a)(10), which requires a signed writing for any contract to pay compensation for

services in negotiating a loan. ECF No. 18 at 7–9. Plaintiff responds that he is exempt as a broker.

ECF No. 19 at 7; FAC ¶ 3.

The New York Statute of Frauds provides that "[a] contract to pay compensation for

services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or

leasing of any real estate or interest therein . . . is void unless in writing." GOL § 5-701(a)(10).

The Statute expressly exempts contracts to pay compensation to "an auctioneer, an attorney at law,

or a duly licensed real estate broker or real estate salesman." *Id*.

Plaintiff does not allege that he is licensed in New York or that he acted under the

supervision of a New York broker. Plaintiff relies on *Lehman* to argue that the exemption should

not be confined to New York licensees. *See Lehman v. Dow Jones & Co.*, 783 F.2d 285 (2d Cir.

1986). But *Lehman* concerned attorneys, and the Second Circuit's reasoning turned in part on the

absence of any "duly licensed" language in the attorney exemption. *See id.* at 291–92. In doing so,

*Lehman* explicitly relied on the understanding in New York law that "the exemption for 'duly

licensed' real estate brokers applies only to real estate brokers licensed by New York." *Id.* at 292.

On the face of the pleadings, Plaintiff does not qualify for the broker exemption under

Section 5-701(a)(10). Accordingly, the alleged commission agreement falls within the Statute of

Frauds and is unenforceable absent a signed writing.

c. Signed Writing Requirement

The FAC relies on a July 17, 2023 email ("July 2023 email") reflecting a ten percent

commission arrangement and a June 2024 "pipeline" email ("FAC pipeline email") referencing a

17.5 percent commission. *See* Exs. A, B. While the emails bear Leykind's automated signature

block, neither email bears Leykind's handwritten signature. *See id.* In the FAC pipeline email, and

several subsequent emails attached to Plaintiff's opposition, Leykind signs off with his typed initial "A-". *See* ECF No. 19 at 5; ECF Nos. 20-1, 20-2.

Automatically generated block signatures, on their own, are insufficient to satisfy the Statute of Frauds. *See Truman v. Brown*, 434 F. Supp. 3d 100, 114 (S.D.N.Y. 2020); *see also Bayerische Landesbank v. 45 John St. LLC*, 960 N.Y.S.2d 64, 65 (1st Dep't 2013) (holding that a pre-populated email signature is insufficient to satisfy the Statute of Frauds' signature requirement). However, typed names or initials can, under certain circumstances, satisfy the subscription requirement. *See Stevens v. Publicis, S.A.*, 50 A.D.3d 253, 254 (1st Dep't 2008). In those cases, the combination of writings must still "contain substantially the whole agreement and all its material terms and conditions." *KJ Roberts & Co. v. MDC Partners, Inc.*, No. 12 Civ. 5779, 2014 WL 1013828, at *7 (S.D.N.Y. Mar. 14, 2014).

Here, the emails in the FAC do not capture the essential terms, such as scope of services and rate of commission across all deals. For example, in *KJ Roberts*, plaintiff relied on an exchange of emails and a spreadsheet to argue that the writings together formed a complete contract for an incentive payment. *See* 2014 WL 1013828 at *7 . The court held that the documents left open a material term—the method for calculating adjustments to the payment—and provided no objective standard to resolve it. *See id.* at *7–8. Because an essential term was missing, the communications were only an unenforceable agreement to agree and could not satisfy the Statute of Frauds. *See id.*

In *Rothstein v. Mahne*, the plaintiff alleged an agreement for a ten percent fee that was reflected in emails and later fully memorialized in a signed letter. *See* No. 15-CV-3236, 2015 WL 6828061, at *3–5 (S.D.N.Y. Nov. 5, 2015). Because the plaintiff alleged that the agreement

reflected in the email exchanges was fully reduced to signed writings thereafter, the court found it satisfied the Statute of Frauds. *See id.*

Here, the July 2023 email provides context about the parties' arrangement but contains no signature from Leykind. *See* Ex. A. The FAC pipeline email includes Leykind's "A-," yet his one-minute reply of "Thanks" does not show assent to the attachment containing the material terms. *See* Ex. B. By contrast, additional emails attached to Plaintiff's opposition, including a March 30, 2024 email in which Leykind affirmed plaintiff's pipeline chart after two days, are more compelling evidence of approval. *See* ECF No. 19 at 5; ECF No. 20-1. The parties' history of past dealings and that pipeline chart's "Notes" column also shed light on the scope of Plaintiff's duties. *See* ECF Nos. 20-1, 20-2. Unlike *KJ Roberts*, those dealings do not leave material terms open, as reflected in Leykind's January 2024 email confirming that Plaintiff had always been paid as promised. *See* ECF No. 20-2.

The Court finds the FAC fails to allege a signed writing that contains the material terms of the commission agreement. While a more concrete memorialization, like the signed letter in *Rothstein*, is not strictly required, Plaintiff must provide more than the two emails attached to the Amended Complaint to capture "substantially the whole agreement and all its material terms and conditions." *KJ Roberts,* 2014 WL 1013828, at *7. Between the emails offered in opposition and Plaintiff's statement in his declaration that "[t]here may be many other emails relevant to my dealings with the Defendants during my tenure with Equitas," ECF No. 20 ¶ 20, the Court recognizes that he may be able to cure these deficiencies upon amendment and support a plausible contract claim. Therefore, the breach of contract claim is dismissed without prejudice and with leave to amend.

## II.    Non-Labor Claims

### a.  <u>Breach of Covenant of Good Faith and Fair Dealing</u>

Plaintiff also asserts a claim for breach of the implied covenant of good faith and fair dealing. FAC ¶¶ 89–93. Under New York law, every contract includes an implied covenant of good faith and fair dealing, which prevents either party from acting "arbitrarily or irrationally" in exercising its discretion under the contract and from depriving the other party of the benefits of the bargain. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018). Because Plaintiff has not sufficiently alleged the existence of an enforceable contract, his claim for breach of the implied covenant of good faith and fair dealing likewise fails. *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) ("Because the duties imposed by the implied covenant of good faith and fair dealing arise as a result of the formation of a contractual relationship between the parties, a claim for breach of the implied covenant of good faith and fair dealing must be dismissed when there is no valid and enforceable contract between the parties.").

Further, a claim for breach of the implied covenant will be dismissed as duplicative if it "arise[s] from the same factual allegations *and* seek[s] identical damages" as a breach of contract claim. *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 288 (S.D.N.Y. 2023) (quoting *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015)) (internal quotation marks omitted and emphasis added). Accordingly, should Plaintiff file a second amended complaint, he would need to establish a valid contract, allege specific conduct that was arbitrary, capricious, or designed to frustrate the contract's purpose, and seek distinct damages to be survive a motion to dismiss. Because Plaintiff may be able to do so, this claim is dismissed without prejudice.

b. Unjust Enrichment

Plaintiff failed to address his unjust enrichment claim in opposition. *See generally* ECF

No. 19. Where a plaintiff abandons a claim at the motion to dismiss stage, dismissal with prejudice

is appropriate. *See Helwing v. City of N.Y.*, No. 18-CV-3764, 2021 WL 781794, at *4 (E.D.N.Y.

Mar. 1, 2021) ("'[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claim

constitutes an abandonment of those claims.'" (quoting *Youmans v. Schriro*, No. 12 Civ. 3690,

2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013))); *see also Bonilla v. Smithfield Assocs. LLC*,

No. 09 CIV.1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (holding that the plaintiff

abandoned claims by failing to respond and granting dismissal as a matter of law).[2] Accordingly,

the unjust enrichment claim is dismissed with prejudice.

c. Account Stated

Likewise, Plaintiff did not oppose Defendants' motion to dismiss his claim for account

stated. *See generally* ECF No. 19. As just established, where a plaintiff fails to defend a claim in

response to a motion to dismiss, that claim is deemed abandoned. *See Helwing*, 2021 WL 781794,

at *4; *Bonilla*, 2009 WL 4457304, at *4. Thus, the account stated claim is dismissed with prejudice.

d. Declaratory Judgment

Plaintiff seeks a declaratory judgment that he is entitled to commission payments. FAC ¶¶

96–97. In opposition to the motion, Plaintiff argues that declaratory relief is necessary because

Defendants take inconsistent positions in their motion—asserting in the alternative that (1) no

---

[2] The Court also notes that the claim is duplicative of that for breach of contract, as it seeks the
same commission payments under the same set of facts. *See* FAC ¶¶ 87–88; *Cooper v. Anheuser-
Busch, LLC*, 553 F. Supp. 3d 83 (S.D.N.Y. 2021) (dismissing unjust enrichment as duplicative
because it was based on the same facts and sought the same damages as a contract claim).

contract exists, that (2) even if a contract exists any contract is unenforceable under the Statute of

Frauds, and that (3) even if it was enforceable, it has not been breached. ECF No. 19 at 12. The

Court notes that this inconsistency is present in Plaintiff's own pleading as well, which asserts both

a valid contract (in the breach of contract and covenant claims) and the absence of one (in the

unjust enrichment claim).

Parties are entitled to plead in the alternative and such inconsistencies do not create a

separate uncertainty that requires declaratory judgment. Resolution of the breach of contract claim

will necessarily decide whether a valid contract exists, whether it is enforceable, and whether it

has been breached. As in *CVS Albany, LLC v. 1688 Rojav Realty, LLC*, declaratory judgment serves

no relevant objective because it merely duplicates the issues already raised by the breach of

contract claim and offers no additional clarification of the parties' legal relationship. *See* No. 1:24-

CV-07145, 2025 WL 2614077, at *3 (S.D.N.Y. Sept. 10, 2025) ("Courts routinely reject

declaratory judgment claims 'when other claims in the suit will resolve the same issues,' as a

declaratory judgment in such cases serves no useful purpose." (quoting *EFG Bank AG v. AXA

Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018))); *see also Duane Reade, Inc. v.

St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Accordingly, the declaratory

judgment claim is dismissed.

### III.   FIFA and NYLL Claims

Plaintiff asserts claims under the Freelance Isn't Free Act and the New York Labor Law in

the alternative. FAC ¶¶ 66–81, 98–125. The viability of Plaintiff's statutory claims depends on his

employment classification. To state a FIFA claim, Plaintiff must qualify as a "freelance worker"

under N.Y.C. Administrative Code Section 20-927, whereas he must plausibly allege an employer–

employee relationship under the NYLL. *See Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 535 (S.D.N.Y. 2014) (holding that drivers were independent contractors rather than employees and therefore not covered by the NYLL).

"In determining whether a worker is an employee or an independent contractor under the NYLL, courts consider the factors. . . :'whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule.'" *Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74, 79 (2d Cir. 2020) (quoting *Bynog v. Cipriani Grp., Inc.*, 802 N.E.2d 1090, 1093 (N.Y. 2003)). Plaintiff concedes that he failed to plead employee status under these factors but asserts that, given an opportunity to amend, he would plausibly allege he was a "misclassified employee" (i.e., improperly treated as an independent contractor when he was in fact an Equitas employee). ECF No. 19 at 14. Thus, the NYLL claims are also dismissed without prejudice.

FIFA defines a "freelance worker" as a natural person or single-person entity retained as an independent contractor in exchange for compensation. N.Y.C. Admin. Code § 20-927. FIFA protects freelance workers and requires a written contract for services of $800 or more. *Id.* §§ 20-927, 20-928(a); *see also Chen v. Romona Keveza Collection LLC*, 208 A.D.3d 152, 156–57 (1st Dep't 2022) (reinstating a FIFA claim where plaintiffs plausibly alleged freelance worker status and the existence of a services agreement). While the FAC recites this statutory definition and alleges that Plaintiff was treated as a freelancer, FAC ¶ 43, Plaintiff has failed to establish an enforceable contract as required by Section 20-928(a), *see supra*; *Provenzano v. Orwel*, 223 N.Y.S.3d 520 (N.Y. Civ. Ct. 2024) ("Plaintiff has failed to establish the existence of an enforceable contract and . . . [a]s such Plaintiff is not entitled to damages under FIFA."). As with his other

claims tied to the commission agreement's enforceability, Plaintiff's FIFA claims are dismissed without prejudice.

### IV.    Leave to Amend

While leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal quotation omitted). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)) (internal quotation marks omitted).

While Plaintiff's unjust enrichment and account stated claims are dismissed with prejudice, the remaining claims—for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory judgment, and violations of FIFA and NYLL—are dismissed without prejudice. Leave to amend is appropriate because Plaintiff has referenced additional emails that may together form a more complete summary of the alleged agreement and potentially cure the deficiencies identified above. *See* ECF Nos. 20-1, 20-2; ECF No. 20 ¶ 20. The covenant, declaratory judgment, and FIFA claims are all contingent on the existence of an enforceable contract, warranting leave to amend. In addition, Plaintiff represents that he may be able to allege that he was misclassified as a freelancer, which, if adequate, could sustain his NYLL claims. *See* ECF No. 20 at 14. Accordingly, Plaintiff is granted leave to file a Second Amended Complaint.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 18. The Court **GRANTS**

Plaintiff leave to file a Second Amended Complaint addressing the deficiencies identified by this

Opinion on or before **October 31, 2025**.


**SO ORDERED.**

Dated:    **September 29, 2025**
          **New York, New York**

_____
          **ANDREW L. CARTER, JR.**
          **United States District Judge**